*FILED*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 MAR 10 PM 3: 29

U.S. DISTRICT COURT
N.D. OF ALABAMA

JANE HOWARD,                    )
                                )
        Plaintiff,              )
                                )       CIVIL ACTION NO.
    vs.                         )
                                )       CV 96-AR-0144-S
FRANKLIN INDUSTRIES, INC.,      )
                                )
        Defendant.              )

Cho

# ENTERED

MAR 1 0 1997

## MEMORANDUM OPINION

The court has before it the motion of defendant, Franklin
Industries, Inc. ("Franklin"), for summary judgment.  Plaintiff,
Jane Howard ("Howard"), an ex-employee of Franklin, alleges that
Franklin violated the Civil Rights Act of 1964, *as amended*, the
Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, *et seq*. ("Title
VII"), and the Age Discrimination in Employment Act, 29 U.S.C. §§
621., *et seq*. ("ADEA"), by discharging her from her position as
an outside salesperson and engaging in disparate treatment based
on Howard's sex and age.  Finding that no genuine issues of
material fact exist, this court determines that summary
disposition under Rule 56 is appropriate.

### I. Pertinent Undisputed Facts

Howard, a fifty-year old white female, commenced working for
Alabama Brick in Huntsville, Alabama in September 1986.  She

1

3〜

filled various positions but ultimately became an outside salesperson. As an outside salesperson, Howard sold bricks in Madison, Morgan, Lawrence and Limestone counties and did commercial work in various other counties.

In October 1994, Franklin bought Alabama Brick. Before the purchase, Franklin was not selling bricks in Northern Alabama. When Franklin bought Alabama Brick, Jimmy Jones ("Jones"), a thirty-four year old male, and Doug Johnson[1] worked as outside salespersons in addition to Howard. Jones commenced working for Alabama Brick in 1989 and worked primarily in Madison county. Doug Johnson worked primarily in Morgan county.

After Franklin bought Alabama Brick, it retained the same outside sales force and hired Jones as sales manager. Franklin considered Doug Johnson, Howard, Jones and Buddy Berry, who was Alabama Brick's Huntsville Sales Manager, for the position, but says that it selected Jones based upon his knowledge of the brick business, his level of motivation, his impressive sales performance and his working relationship with other sales representatives. There is no evidence to contradict Jones' superior qualifications.

In addition to retaining the three outside salespersons, Franklin employed Keith Lammons ("Lammons") and Gerald Blomeyer

---

[1]Doug Johnson's age is not known to the court.

2

("Blomeyer").  Blomeyer was assigned Jackson and Dekalb counties.
Lammons, who previously worked in the office at Alabama Brick and
who had no outside sales experience, was allowed to "float"
through different counties while he gained experience.  Another
employee, Mary Nell Weeks ("Weeks"), was working in the customer
service office of Alabama Brick at the time Franklin bought it.
Weeks, who was pregnant, stated that Charles Shelby ("Shelby"),
President of Franklin, told her that he had thought about
offering her an outside sales position but decided against it.
His rationale was that he thought [Weeks] "need[ed] to stay home
and raise those babies."  (Decl. Weeks).

When Franklin bought Alabama Brick, it hired Pete Johnson, a
forty-seven year old male, to be its so-called Commercial
Representative.[2]  Pete Johnson had no experience selling bricks.
This position was not offered to anyone else.

Franklin divides territories differently than did Alabama
Brick.  Each salesperson gets a specified territory, and no
experienced salesperson is allowed to float through various
territories.  Thus, each salesperson was assigned to a specific
county or counties.  James West, ("West") Senior Vice-President

---

[2]There is a dispute of fact surrounding whether a position called
"Commercial Representative" even exists.  Franklin asserts that it did not
hire any single employee to focus solely on commercial accounts.  Contrarily,
Howard argues that Pete Johnson was hired to fill that position and was
ultimately fired because he could not sell commercial accounts.  This court
will proceed as if a separate and distinct position did exist.

3

of Franklin, and Jones met and determined which salesperson was strongest in each county. Based upon this determination, Jones was given Madison county, Doug Johnson was given Morgan and Howard was given Limestone county as well as two counties in south central Tennessee. In addition to these assigned territories, each salesperson was allowed to continue selling to their active accounts and could follow these accounts to different counties if a customer moved.

Franklin established a projected monthly goal for each salesperson. Howard was asked how to divide up the yearly projected goal and she told Jones to divide it by month. As a result, her monthly goal ended up being around $53,100.00. After establishing the goals, Howard was informed that Limestone county would be her primary county. She complained that her assigned goal was unattainable in such a limited territory. Neither her goal nor her territory was changed.

Howard failed to meet her goal during five out of the ensuing seven months. In addition to not meeting her goals, Howard spent the least amount of money among outside salespersons on mileage and expenses. This indicated to Franklin that Howard was not putting forth sufficient sales effort. On or about May 14, 1995, West informed Howard that if she did not improve she would be fired. Howard's numbers did not improve. She was

4

terminated on or about June 9, 1995.

Pete Johnson, a younger male, was also fired for failing to meet his sales goals.  In fact, when Pete started performing unsatisfactorily, Howard requested and was assigned Pete's commercial sales accounts.

After Franklin's purchase of Alabama Brick, all of the outside salespersons, including Howard, had accounts reassigned. West stated that to his knowledge Howard had only two accounts reassigned.  Jones states that Howard had additional accounts reassigned because either she was not actively pursuing those accounts or the customers requested that Howard no longer call upon them.  Jones states that numerous customers requested that Howard not call upon them.  In contrast, Howard offers evidence that some of the customers stated that they never spoke with Jones or anyone at Franklin "to complain about Jane Howard, or ask that she not call upon [them] anymore."  (Decl. Burl Chandler; Decl. Hurl Chandler).[3]  Accordingly, viewing the evidence in the light most favorable to the non-moving party this court will presume that the aforementioned customers did not complain to Franklin about Howard.  Further, Howard states that she was authorized to sell to some accounts in Doug Johnson's

---

[3]Franklin offers evidence that Chris Chandler, a representative of Hurl and Burl Chandler, told Franklin that he did not want to buy bricks from Howard.  (Franklin's Supplemental Submission, Ex.1)

region and did sell to Native Construction, Cecil Rubbs, Connie Livingstone and Hayden Coffey, but that the commissions, except on Native Construction, erroneously went to Doug Johnson. (Howard Aff. at 4).  In February 1995, Howard states that she met with West and Jones to discuss why the accounts of Distinctive Builders, Jerry Warren and Jerry Brooks were reassigned to Blomeyer.  She was not told why.

Howard filed an EEOC charge in January 1995, alleging that she was discriminated against because of her age and sex.  She filed a subsequent charge in June 1995, alleging that she was retaliated against by being fired for filing her EEOC complaint. (Franklin's Motion for Summary Judgement Howard Depo. Ex. 1 & 2).

## II. Analysis

### A. Rule 56

Rule 56 states, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F. R. Civ. P. 56(c).  The obvious was stated by the Eleventh Circuit as follows: "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Turnes v. AmSouth

Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). Franklin has invoked Rule 56.

### B. Scope of Charge

Before addressing the merits of Howard's Title VII and ADEA claims, the court will address Franklin's claim that some of the allegations in Howard's judicial complaint are not contained within her EEOC charge and, therefore, are due to be dismissed. The scope of a judicial complaint under Title VII and the ADEA is limited to the acts of discrimination contained in the EEOC charge or claims "like or related" to claims raised in the charge. *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1569 (11th Cir. 1987). Furthermore, Howard's judicial complaint is "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 (11th Cir.), *cert. denied*, 115 S. Ct. 298 (1994)(citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

In the instant action, Howard's complaint alleges, *inter alia*, that she was terminated because of her sex and age.[4] She does not specifically allege in either of her EEOC charges that she was terminated due to her sex and/or age. Howard's initial

---

[4]Because of the notice pleading requirements, this court finds that Howard sufficiently alleged termination based upon age. (Compl. at 4).

EEOC charge in January 1995, alleges age and sex discrimination. Her second EEOC charge in June 1995, subsequent to her termination, only alleges that she was terminated in retaliation for filing her initial EEOC charge. As a result, Franklin argues that Howard cannot bring a sex or age discharge claim because she limited the scope of her EEOC charge by not asserting that she was discharged for reasons of sex and/or age.

Unless a charge alleges practices "like or related to" the practices alleged in the complaint, it cannot serve as the basis for civil action. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 928 (11th Cir. 1983). In that vein, courts are required to "construe an EEOC charge with the utmost liberality." *Collins v. Executive Airlines, Inc.*, 934 F. Supp. 1378, 1381 (S.D. Fla. 1996)(quoting *Wright v. Manatee County*, 717 F. Supp. 1493 (M.D. Fla. 1989). In the instant action this court finds that the claims of sex and age termination are sufficiently related to the subsequent retaliation charge so as to fulfill the "like or related to" test. "Logic dictates that a claim for [age or sex] discrimination may be reasonably related to a subsequent claim of retaliatory conduct based on the earlier charge of discrimination." *Id.* (citing cases).

### C. Title VII and ADEA Discrimination

As an initial matter, the court notes that Howard's *prima*

*facie* case in Title VII and ADEA disparate treatment cases is essentially the same. *See Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550 (11th Cir. 1988)(stating that there is a slight variation in the application of the *McDonnell Douglas* framework to age cases); *see also Young v. General Foods Corp.*, 840 F.2d 825 (11th Cir.), *cert. denied*, 488 U.S. 1004, 109 S. Ct. 782 (1989). Howard may establish her *prima facie* case under the ADEA and Title VII in one of three ways: (1) by presenting direct evidence of discriminatory intent; (2) by proving a statistical pattern of discriminatory impact; or (3) by meeting the test for circumstantial evidence set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *See Castle*, 837 F.2d at 1559. As Howard concedes, her case rests solely and independently on circumstantial evidence. (Howard's Brief in Opposition to Franklin's Motion for Summary Judgment at 13). Circumstantial evidence, analyzed under the rubric of *McDonnell Douglas* and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981), can establish plaintiff's *prima facie* case.

To establish her *prima facie* case Howard must demonstrate that: (1) she is a member of a protected group; (2) she was terminated or not hired; (3) she was replaced by a member outside the protected group or that a member outside the protected group

was hired; and (4) that she was qualified for the job.  *See*

*Walker v. Nationsbank of Florida, N.A.*, 53 F.3d 1548, 1556 (11th

Cir. 1995); *see also Carter v. City of Miami*, 870 F.2d 578, 583

(11th Cir. 1989).  Alternatively, Howard can demonstrate her

*prima facie* case by establishing that she was treated differently

than similarly-situated individuals outside the protected class.

If Howard establishes a *prima facie* case, then the burden shifts

to Franklin to establish evidence of a legitimate,

nondiscriminatory reason for fashioning the employment decision

that it did.  *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*,

97 F.3d 436, 440 (11th Cir. 1996).  Finally, if Franklin meets

this exceedingly light burden of production, the burden shifts to

Howard to demonstrate that Franklin's proffered reason for the

adverse employment decision was pretextual and that

discrimination was the real reason.  *See id.*

This court discerns that Howard is asserting the following

discriminatory claims: (1) that Franklin treated her differently

from the way it treated similarly-situated younger men by

assigning her an unproductive territory and unrealistic sales

goals; (2) that she was not hired for the sales manager or

commercial representative position because of her age and/or her

sex; and (3) that she was ultimately terminated because of her

10

sex and/or age.[5]  This court will apply the *McDonnell Douglas*
burden shifting analysis to each argument in turn.

1. Similarly Situated

Howard asserts that Franklin discriminated against her by
assigning her an unproductive territory and unrealistic sales
goals.  This court disagrees.   In order for Howard to succeed on
this claim, she must demonstrate that she was treated differently
than similarly-situated employees. *See Martin v. Teledyne Brown
Engineering*, 924 F. Supp. 1131 (S.D. Ala. 1996).  Howard has
failed to do this.  Howard was treated the same as all other
outside employees with respect to being assigned territories and
sales goals.  All outside salespersons were assigned territories
based upon their previous sales performance at Alabama Brick, and
the salespersons had a say into their individual monthly goals.
Franklin has every right to compete in some, none or all counties
in Northern Alabama, and this court will not second guess the
assignment of territories to salespersons.  Every territory good,
or bad, had to be assigned to some outside salesperson.  If this
court were to adopt Howard's argument, then any employee who gets
a potentially bad territory would have a viable basis for an

---

[5]Because Howard has never pled retaliation in her complaint, this court
will not address any potential retaliation claim.  Perhaps Howard is
proceeding on the reasonable but erroneous assumption that her claim of
discharge for age and/or sex subsumes a retaliation claim.

11

action for disparate treatment.  Howard has failed to proffer any
evidence that she was treated differently from other similarly
situated employees with regards to the assignments of territory
and sales goals.  Accordingly, because Howard has failed to
demonstrate a *prima facie* case for her similarly-situated claim
with respect to her territory and sales quota, Franklin's motion
for summary judgment as to this claim is due to be granted.

2. Hiring

Franklin does not dispute that Howard was within the
protected group for ADEA and Title VII claims, age 48,[6] and sex,
female, respectively, or that she was not hired and an individual
outside the protected class was hired for the position of Sales
Manager.  Franklin's motion, however, does challenge whether
Howard was qualified for the position of Sales Manager, and
whether an individual outside the protected age class was hired
for the Commercial Representative position.

The evidence clearly indicates that Howard was qualified for
both the Sales Manager position and the assumed-to-exist
Commercial Representative position.  Howard worked as an outside
salesperson in the brick industry in Northern Alabama for eight

---

[6]Howard asserts in her brief that she was forty-six years old when
Franklin bought Alabama Brick.  (Howard's Brief in Opposition to Franklin's
Motion for Summary Judgment at 16).  However, it appears from the evidence
that she was actually 48.  (Shelby Aff. Ex. B1).  This court will proceed as
if Howard was born in July 1946 and was 48 at the time of the purchase.

years when the positions became available.  Furthermore, Franklin
considered her for the positions and ultimately hired individuals
with less experience.  In fact, Howard actually received the
commercial accounts from Pete Johnson less than thirty days after
Franklin hired him.  While the individuals hired may have been
more qualified, the question of who is the most qualified or if
the individuals hired are in fact qualified calls into question
whether Franklin's hiring decision was a legitimate non-
discriminatory employment decision.

     With respect to Howard's age claim for not being hired for
the Commercial Representative position, this court determines
that Howard failed to establish the *prima facie* case.  Pete
Johnson, a forty-five year old, was hired for the position.
While Howard can establish a *prima facie* case of age
discrimination even though the individual hired is also in the
protected class, the individual hired cannot be insignificantly
younger than Howard.  *See O'Connor v. Consolidated Coin Caterers
Corp.*, ___ U.S. ___, 116 S. Ct. 1307, 1310 (1996).  Because Pete
Johnson is only three years junior to Howard, this court
determines that Franklin's decision to hire him does not raise an
inference of age discrimination, and therefore, Howard has failed
to meet her *prima facie* case with respect to this claim.
Franklin's motion for summary judgment with regard to Howard's

ADEA hiring claim as to Commercial Representative position is due
to be granted.  However, Howard has demonstrated a *prima facie*
case with respect to the Sales Manager position and the Title VII
aspect of the Commercial Representative position.

Under the *McDonnell Douglas* framework, the burden shifts to
Franklin to produce evidence that it had a legitimate, non-
discriminatory reason (not involving sex) for hiring Jones and
Pete Johnson and therefore, for not hiring Howard.  *See Cooper-
Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994).
Franklin easily meets this "exceedingly light" burden of
production.  *See Walker v. Nationsbank*, 53 F.3d 1548, 1556 (11th
Cir. 1995).  Simply put, Franklin hired Jones and Pete Johnson
because they were qualified for the positions.  In fact, Howard
concedes that Jones, who had been in brick sales for five years
when selected for the Sales Manager position, had a higher sales
total than she did.  In addition, the evidence demonstrates that
Pete Johnson had significant sales experience.  This court cannot
and will not act as a "super tribunal" or a substitute decision
maker for employers and second guess decisions within their well
recognized purview.

Because Franklin has met its burden, the onus returns to
Howard to prove that the reason advanced by Franklin for its
hiring decision was a mere pretext for sex and/or age motivated

14

discrimination.  In examining Howard's evidence of pretext, the court reiterates that it must draw all reasonable inferences and resolve all reasonable doubts in favor of Howard.

Howard proceeds to argue that Franklin's reasons for hiring Jones and Pete Johnson were pretextual.  In order to establish pretext, Howard must establish that Franklin's proffered reason for the employment action is untrue and that discrimination is the real reason.  *See Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 442-43 (11th Cir. 1996); *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996)(*en banc*); *see also LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 842-43 (1st Cir.), *cert. denied*, 511 U.S. 1018, 114 S. Ct. 1398 (1994).  *But see Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061 (3d Cir. 1996)(*en banc*), *cert. filed*, 65 U.S.L.W. 3571 (1997).  This court will address each employment position independently.

First, Howard argues that there is a pervasive sexist attitude at Franklin and that she was more qualified than Jones, so therefore, Franklin's decision to hire Jones must be pretextual.  This argument simply will not fly.  Howard, herself, states that Jones was the top salesperson among the three Alabama Brick outside salespersons.  She admits that she has no information or documents that would lead her to believe that Jones was hired because he was a man.  Further, Howard has not

had any conversations with anyone that would lead her to believe that Jones was hired because he was a man.  The simple facts demonstrate that Jones was hired because Franklin decided that he was best for the position of Sales Manager.  Franklin may hire any "employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, so long as its action is not discriminatory."  *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984).  Accordingly, Howard has failed to demonstrate that Franklin's proffered reason was pretextual.

Second, Howard argues that because she believes she is more qualified that Pete Johnson and because the position was not advertised, Franklin's decision to hire Pete Johnson was pretextual.  Howard, however, offers no evidence that the decision to hire Pete Johnson was based upon his sex, and/or the decision to not hire Howard was based on her sex.  Without even an inkling of evidence that Franklin's motivation in hiring Pete Johnson was based on sex, Howard cannot establish pretext.  Moreover, within thirty days of Pete Johnson's hiring, Howard requested and was given Pete Johnson's commercial accounts because he was performing inadequately.  Franklin's motion for summary judgment as to Howard's Title VII hiring claims is due to be granted.  The same is doubly true of Howard's ADEA claim which

16

she has virtually abandoned, illustrating, perhaps, the need to make an earlier choice of alleged bases for discrimination.

3. Termination

Because it is clear that Howard has made out a *prima facie* case under Rule 56 for her Title VII and ADEA termination claims, this court will proceed to determine if Franklin has met its burden of demonstrating a legitimate non-discriminatory for terminating Howard.  This burden on the employer is one of production, not persuasion.  *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-511, 113 S. Ct. 2742, 2749 (1993).  In the instant action, Franklin met its burden of production by asserting and providing evidence that Howard was fired because of her poor job performance and poor sales effort

Franklin having met its burden, the burden shifts to Howard to show that Franklin's proffered reason is untrue and that some proscribed form of discrimination was the real reason.  *See Isenbergh*, 97 F.3d at 439.  Howard admits that her numbers reflect that she was not meeting her sales goal and not generating a significant number of calls on customers or amount of mileage traveled.  However, she argues that it was impossible for her to meet her goal and that she did not know that she was being evaluated based on the number of calls she made on potential customers or the mileage she traveled.

17

Initially, Howard argues that Franklin cannot evaluate her on the number of calls she made on customers, her mileage totals and/or her expenses generated in attempting to sell accounts, because she was not aware of this evaluation plan.  It is clear that an employer does not have to inform its employees of all of its ways of evaluating performance.  "A standard known only to the employer and interpreted only by the employer could nevertheless be clear, specific, and capable of evaluation, so long as the standard could be applied by a fact-finder after the discharge has taken place and the standard has been revealed." *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1499 (11th Cir. 1985).  Such is the case here.  Franklin evaluated all of its employees on their efforts to sell bricks, examining each salesperson's call reports, mileage and expenses.  These factors revealed that Howard was expending the least amount of effort of any retained salesperson.  Howard asserts that she simply did not entertain customers and/or did not turn in her expenses and mileage.  This argument is sufficiently implausible as to be disregarded without invading the province of the jury.

Next, Howard asserts that Franklin assigned her an unproductive territory, unrealistic sales goals, reassigned her accounts, and assigned her commercial accounts, which are more difficult to sell, all in an effort to rid Franklin of its oldest

salesperson and its only female outside salesperson in Northern
Alabama.  The evidence simply does not reflect such a well-
planned and invidious scheme.

Howard argues that when Franklin bought Alabama Brick it
assigned territories and quotas in an effort to keep the young
male employees and eliminate the one older female employee.  She
asserts that Franklin gave her Limestone county, a county she
considers to be unproductive, and assigned a sales quota that was
unattainable based upon the potential customers within Limestone
county.  Contemporaneously, Howard argues that the two retained
salesmen were given the most productive counties, Madison and
Morgan, and attainable sales quotas.  This is where the fallacy
in her argument rears its head.  Franklin asserts that it
assigned Madison and Morgan counties to Jones and Doug Johnson,
respectively, because those counties were their primary counties
while working for Alabama Brick.  Further, Franklin asserts that
Howard was given Limestone county because she did not have a
primary county while working for Alabama Brick, but instead was
working in various counties.  Howard agrees that assignment of
territories mirrors where Jones and Doug Johnson had previously
been working, but argues that she should have been able to
continue to work throughout various counties and/or given a more

productive county.[7]  This court cannot tell Franklin how to conduct its business.  It must be free to exercise judgment without walking perennially on the Title VII and the ADEA eggshells.

Further, Howard asserts that even if the assignment was legal, she still could not attain her goal and was doomed to fail because her goal was to high and Franklin reassigned many her accounts to other salespeople.  It is undisputed that Franklin reassigned some of her accounts.  However, it is likewise undisputed that Franklin reassigned customers from all of the outside salespersons to other salespersons.  In fact, Howard was the beneficiary of some of these reassignments.  Howard argues that she had more accounts reassigned and that this rises to the level of "just meanness."  While this court does not want to promote meanness, making every employee happy is not the goal of Title VII or the ADEA.

Finally, Howard argues that Franklin assigned her a large number of commercial accounts, which are very time-consuming, in an effort to reduce her actual sales dollars and force her to not attain her set quota.  The evidence demonstrates that commercial accounts are slow to generate actual sales dollars and therefore,

---

[7]Howard was able to keep her previous customers but was not allowed to generate new customers outside of her assigned territory.  (Howard's Brief in Opposition to Motion for Summary Judgment at 24).

might create an artificially low amount of sales.  However, the evidence also demonstrates that while Howard had a large number of commercial accounts, she requested many of the commercial accounts when Pete Johnson was unable to sell them.  Furthermore, Pete Johnson, a male, younger than Howard, who had the commercial accounts previously, was fired a month before Howard, when he was unable to meet his quota.  Thus, it is clear to the court that Howard has failed to demonstrate that Franklin's action in terminating her for poor performance was pretextual.

Assuming arguendo that Franklin's proffered reason was pretextual, Howard has failed to demonstrate that sex and/or age discrimination was the real reason for her termination.  Howard argues that the following evidence demonstrates that Franklin's decision to terminate her was based on her sex:[8] (1) that the president of Franklin did not hire Weeks, a pregnant woman, because he said she needed to be "home raising those babies," (2) that West, Senior vice-president of Franklin, described Howard as assertive and "it is common knowledge that women who are seen as 'aggressive' or 'assertive' are not desired by many males as business associates" (Howard's Brief at 19), and (3) that Franklin had a poster of a wolf that stated that "Franklin

---

[8]Howard offers virtually no evidence that her termination was based on age.  Accordingly, this court will not proceed through a lengthy analysis of her ADEA termination claim.

21

Brick's salesmen are a different breed", thus indicating that the
sales force is composed of "men" and creating ostensibly a
picture of a male sales force, because a "reference to a violent
and apparently angry animal is in opposite [sic] to the more
mild-mannered and non-violent female gender." (Howard's Brief at
19).[9]  Incidentally, the picture of the wolf did not reflect its
gender.  The court's understanding of wolf behavior would suggest
that a female wolf will bite

    While the alleged comment made to Weeks is certainly
inappropriate and perhaps evidence that Weeks was discriminated
against, it does not demonstrate that Howard was discriminated
against.  The evidence reflects that the Howard had the worst
sales performance of all the outside salespersons, save Pete
Johnson, who was also fired.  Moreover, Franklin had and still
has females employed in outside sales in Nashville and Atlanta.
Howard offers no link between her sex and Franklin's decision to
terminate her for poor performance and lack of effort.

    "[C]onclusory allegations of discrimination, without more,
are not sufficient to raise an inference of pretext or
intentional discrimination where [an employer] has offered . . .
extensive evidence of legitimate, non-discriminatory reasons for

-------

    [9]Howard also asserts that she had to hand out hats at a golf course and
this was demeaning.  However, the evidence reflects that men also had to stand
on the golf course and hand out hats.

its actions." *Young v. General Foods Corp.*, 840 F.2d 825, 830

(11th Cir.), *cert. denied*, 448 U.S. 1004, 109 S. Ct. 782

(1989)(quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597

(11th Cir. 1987)).  Howard has offered nothing more than mere

speculation and conjecture.  In fact, her assertions that it is

common knowledge that men do not like "assertive" women and that

a violent and apparently angry animal is opposite to the more

mild-mannered and non-violent female gender are stereotypes of

the kind this court, Congress and the EEOC frown upon.  Thus,

Franklin's motion for summary judgment with respect to Howard's

Title VII and ADEA discharge claim is due to be granted.

### III. Conclusion

The evidence and arguments submitted by the parties do not

establish that any genuine issue of material fact exists with

regard to any of Howard's claims.  Because no genuine issues of

material fact exist and also because this court determines that

Franklin is entitled to judgment as a matter of law, Franklin's

Rule 56 motion will be granted by separate and appropriate order.

DONE this _10_ day of March, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT

23